IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| AKBAR AMIN-AKBARI | § | |
| | § | |
| V. | § | |
| | § | |
| THE CITY OF AUSTIN, TEXAS, and | § | A-13-CV-472-DAE |
| MICHAEL BARGER, | § | |
| HENRY AGUILAR, | § | |
| RICHARD BOZELLI, and | § | |
| PHILLIP KELLY, in their individual | § | |
| capacities | § | |

**ORDER**

Before the Court are: Plaintiff's Motion to Compel Deposition Testimony and Reimbursement of Costs (Dkt. No. 60); Defendants' Opposition to Motion to Compel and for Costs, Cross Motion for Limited Stay of Discovery with Respect to Punitive Damages Only and Request for Expedited Ruling (Dkt. No. 62); and Plaintiff's Reply to Defendants' Response to his Motion to Compel Deposition Testimony and Reimbursement of Costs (Dkt. No. 66). Also before the Court are Plaintiff's Motion to Compel Discovery and Modify the Scheduling Order (Dkt. No. 64); Defendants' Opposition to Plaintiff's Motion to Compel and to Modify Scheduling Order (Dkt. No. 67); and Plaintiff's Reply to Defendants' Response to Plaintiff's Motion to Compel Discovery and Modify the Scheduling Order (Dkt. No. 74).

**I.  Background**

This is a suit brought pursuant to 42 U.S.C. § 1983 seeking damages from the City of Austin and four Austin Police Department officers. Akbar Amin-Akbari, a cab driver in Austin, Texas, alleges that on June 10, 2011, his cab was "commandeered" by an APD officer and he was forced to accept as a fare an intoxicated passenger, who, shortly after being placed in his cab, assaulted

Amin-Akbari. He seeks actual and punitive damages from the officers, and, based on the allegation that it was the policy, practice and custom of APD to commandeer taxi cabs to transport intoxicated persons, actual and punitive damages from the City.

## I.     Plaintiff's Motion to Compel and for Reimbursement of Costs (Dkt. #60)

### A.     Motion to Compel Testimony of Richard Bozelli

Amin-Akbari first complains that at the deposition of Defendant Richard Bozelli, his counsel instructed him not to respond to questions regarding his personal finances. Amin-Akbari states that the questions were plainly relevant to his claim for punitive damages, and that the instruction violated the Federal Rules of Civil Procedure. At the deposition, defense counsel objected to the line of questioning, arguing it was an invasion of Bozelli's personal privacy, and "not reasonably calculated to lead to admissible evidence." Dkt. No. 60-1 at 3. Defendants have since filed a cross motion to stay discovery related to punitive damages until the Court rules on their pending dispositive motions. Dkt. No. 62 at 2-3. Defendants request that no discovery on the personal finances of any of the officers be permitted unless the Court first finds that Amin-Akbari's liability claims may go forward. *Id.*

During depositions, counsel "may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3)." FED. R. CIV. P. 30(c)(2). Bozelli's personal financial information is not privileged, and, because Amin-Akbari is seeking punitive damages, is discoverable. The Court had not previously prohibited questions on this subject, and Bozelli did not seek protection of this information prior to the deposition. And since the time of the deposition, his counsel has not filed a motion under Rule

30(d)(3).[1] Under the plain language of the rule, Defendants' counsel was not permitted to instruct Bozelli not to answer the question.

Rather, Amin-Akbari is entitled to discovery on the issue of personal finances, as his questions on those issues are "reasonably calculated to lead to the discovery of admissible evidence" related to punitive damages. FED. R. CIV. P. 26(b)(1). "When a punitive damages claim has been asserted by the plaintiff, a majority of federal courts permit pretrial discovery of financial information of the defendant without requiring plaintiff to establish a *prima facie* case on the issue of punitive damages." *Mid Continent Cabinetry, Inc. v. George Koch Sons, Inc.*, 130 F.R.D. 149, 151 (D. Kan. 1990) (citations omitted). In particular, courts have held that since "punitive damages may be awarded in § 1983 suits," production of information concerning an individual defendant's personal financial status "may be properly compelled." *Renshaw v. Ravert.*, 82 F.R.D. 361, 363 (E.D.Penn. 1979) (citations omitted). However, when courts have ordered that individual defendants disclose their financial information, they have sometimes limited production to a statement of the defendant's net worth. *See, e.g., CEH, Inc. V. FV Seafarer*, 148 F.R.D. 469, 473 (D.R.I. 1993). Accordingly, the Court **GRANTS** Amin-Akbari's motion as to Bozelli's testimony. Defendants' cross motion to stay discovery with respect to punitive damages is **DENIED**. The Court orders that within 10 days of the date of this order each of the individual Defendants provide Amin-Akbari with

---

[1]Fed. R. Civ. P. 30(d)(3) states:

At any time during a deposition, the deponent or a party may move to terminate or limit it on the ground that it is being conducted in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent or party. The motion may be filed in the court where the action is pending or the deposition is being taken. If the objecting deponent or party so demands, the deposition must be suspended for the time necessary to obtain an order.

a sworn statement of his net worth, or resubmit to deposition on this subject on a mutually agreeable date.

### B. Reimbursement of Costs and Attorneys' Fees

Amin-Akbari also complains about defense counsel's refusal to allow an attorney in California to defend the deposition of his expert witness without being admitted to the Western District of Texas. The deposition was scheduled to take place in California, and Amin-Akbari's counsel wished to save costs by having an attorney in California defend the deposition, and also wanted to save the $100 fee for the attorney to be admitted *pro hac vice*. Defense counsel refused to permit this, and instead suggested that Plaintiff's counsel appear by phone. Plaintiff was unhappy with this suggestion, so the California attorney sought and was granted admission *pro hac vice*, and made a limited appearance to defend the deposition. *See* Dkt. No. 45.

Amin-Akbari argues that defense counsel's refusal to cooperate on this issue unnecessarily increased his costs by causing the expenditure of the $100 *pro hac vice* fee, and requests that, as a Rule 30(d)(2) sanction, Defendants be ordered to pay the $100 fee. Dkt. No. 60 at 4. Amin-Akbari argues that "by refusing to stipulate to the appearance of local counsel at his deposition," Defendants "impeded and attempted to frustrate" the deposition of Amin-Akbari's witness. *Id.* In addition to the $100, he also requests additional sanctions of $1,350 for the attorneys' fees spent preparing the motion asking for the $100. *Id.* at 5.

This borders on the absurd. If counsel was concerned about keeping costs down, he should not have spent $1,350 in fees seeking to recover $100, particularly when there was little authority suggesting that defense counsel was obligated to agree to the relief Amin-Akbari was requesting for the California attorney. Why not let the $100 slide and move on? The true question counsel should

be asking themselves is why a dispute over a $100 fee merited filing a motion. The motion for the $100 fee and additional sanctions is **DENIED**.

## II.     Plaintiff's Motion to Compel and to Modify the Scheduling Order (Dkt. #64)

Amin-Akbari's second discovery motion seeks to compel the Defendants to produce three categories of information: (1) reports of assaults on, or complaints by, taxi cab drivers made to the City of Austin and the Austin Police Department; (2) additional deposition testimony regarding police surveillance video tapes; and (3) the production of records of recent complaints of misconduct against the individual defendants. Amin-Akbari also requests an extension of the deadline for completion of discovery.

### A.     Reports and Complaints Related to Cab Drivers

In his second Requests for Production, Dkt. No. 64-1 at 2, Amin-Akbari requested that Defendants produce police reports of assaults on taxi cab drivers and complaints from taxi cab drivers regarding police conduct. Dkt. No. 64-1 at 2-3. Amin-Akbari contends the reports are relevant to determining whether cab drivers have had experiences similar to his. Dkt. No. 64 at 3. He states that the reports are calculated to lead to evidence of a policy, practice, or custom of the APD in using cabs to transport intoxicated individuals the police encounter, a necessary element of his claim against the City. *Id.* Defendants initially refused to produce any reports, claiming that the request was unduly burdensome, because "the City would have to pull all assault reports in the last five years and there would be thousands," and "someone would have to read enough of each report to figure out if a taxi driver was involved." Dkt. No. 64-1 at 2.

When pressed, however, the City changed its position, and amended its response, indicating that it in fact could search offense reports according to a variety of fields, which would allow it to

narrow considerably the reports needing review.[2]  The City ran a computer search that identified reports that listed "assault" or "aggravated assault" as the offense, and "cab" or "taxi" as the occupation of the victim.  Dkt. No. 64-3 at 3.  After controlling for family violence, pedicab drivers, and "others that simply seemed to have no relevance to any of the issues in the case," the City identified 207 offense reports responsive to Amin-Akbari's request.  *Id.*[3]  Counsel for the City states she then personally reviewed the police reports.  Dkt. No. 64-3 at 3.  Of the 207 reports, counsel identified and produced the only two claimed to "involve[ ] law enforcement assisting an intoxicated person with a taxi." Dkt. No. 67 at 8.  The City also produced 29 other reports where the taxi cab passenger was intoxicated.  *Id*.  However, the city redacted these 29 reports, removing the identity of and contact information for the officers, witnesses, victims and alleged perpetrators.  *Id.*  It is the City's position that neither the 29 redacted reports, nor the remaining 176 reports are relevant, as they "do not show APD involvement before the response to the assault, since it seems clear that victims know how to make clear reports about law enforcement involvement." *Id.*

      The court disagrees that this is clear.  For any number of reasons—shock, confusion, distrust of police—victims of an assault may fail to give a full report.  Officers may also choose not to include such information in their report.  Indeed, the police report in this very case fails to mention that the passenger that assaulted Amin-Akbari had been placed in his taxi by law enforcement,

---

[2] It is concerning that the original response indicated that gathering the records would be unduly burdensome, when that was not the case.  It is not clear whether this was the fault of counsel not diligently inquiring into the existence of the records or capabilities of the database, or APD giving inaccurate information to counsel.  Regardless, the Defendants and their counsel are cautioned that they must diligently search for and produce responsive records to meet their obligations under the Federal Rules of Civil Procedure.

[3] With regard to *complaints* to the City from taxi cab drivers regarding police conduct, the City claims Amin-Akbari's complaint is the sole complaint of that sort. Dkt. No. 67 at n.10.

despite the fact that Amin-Akbari claims he informed officers of this, and despite the fact that on the night of the assault, the officers responding to Amin Akbari's 911 call contacted one or more Sixth Street officers to inquire whether they had placed a passenger in his cab. Dkt. No. 64-6. Clearly the reporting officers were aware of how the assailant had gotten into Amin-Akbari's cab, yet they did not note that in their reports. Under counsel's standard of what is relevant, then, even Amin-Akbari's police report would not be relevant to this case.

The standard for discovery is plain. So long as the request is "reasonably calculated to lead to the discovery of admissible evidence" necessary to prove an element of Amin-Akbari's claim, the City must produce the requested documents. FED. R. CIV. P. 26(b)(1). Any concern about the burden of gathering the relevant information is moot, as Defendants have already run the relevant computer searches and identified the responsive records. The Court orders Defendants to produce all 207 reports, unredacted.[4]

### B.  Deposition Testimony Regarding Police Surveillance Video Tapes

Amin-Akbari also seeks relief related to a corporate representative deposition he took of the City regarding information about the status of the "dashboard videos" from the vehicles of two of the officers who responded to his 911 call. Dkt. No. 64 at 7. In brief, during the time at issue, APD procedures called for officers to turn in the videotapes from the dashboard cameras when those tapes were full. The tapes were stored in a central storage facility for a designated period of time, after which they were erased and reused. In the case of the two tapes at issue here, there is apparently no record of them being turned in to the tape storage facility, despite the fact that the assault took place

---

[4] If Defendants have privacy concerns regarding the officers, witnesses, victims and alleged perpetrators identified in the reports, they already have a vehicle to remedy that, in that they may produce the reports subject to the Protective Order, identified as "attorneys' eyes only."

more than three years ago.  Dkt. No. 74-2 at 6.  Amin-Akbari thus noticed a Rule 30(b)(6) deposition of the City on this topic, in response to which the City designated the storage facility supervisor as the deponent.  In his deposition, the supervisor testified that he did not know what had become of the tapes since the records reflected they never came into his facility's possession.  Dkt. No. 64 at 6-7.  Amin-Akbari contends that Defendants did not prepare the supervisor sufficiently to comply with Rule 30(b)(6), and requests that Defendants be ordered to provide another witness who can testify regarding the tapes.  Dkt. #74 at 6.

Rule 30 provides that a party may notice the deposition of an organization by stating with "reasonable particularity the matters for examination."  FED. R. CIV. P. 30(b)(6).  An organization so noticed must then designate a person or persons to testify on its behalf on those topics.  The organization must prepare its designee, "in order that they can answer fully, competently, unevasively, the questions posed . . . as to the relevant subject matters."  *Brazos River Authority v. GE Ionics, Inc.* 469 F.3d 416, 433 (5th Cir. 2006) (citations omitted).  That preparation should go "beyond matters personally known to that designee" to include information "from documents, past employees, or other sources." *Id*.  Amin-Akbari complains that the City failed to designate someone with knowledge of what happened to the two officers' tapes, and failed to prepare the designated witness properly.  The City disagrees, and argues their witness's testimony represented the best knowledge Defendants had regarding the status of the tapes.  Dkt. No. 67 at 4.  Indeed, Defendants argue, "there is no one who can testify as to what happened to the videos." Dkt. No. 67 at 9.

The Court is unpersuaded by Defendants' arguments.  Amin-Akbari's notice of deposition directed Defendants to designate a 30(b)(6) representative "who is most competent to testify about the storage of any video recordings made . . . when APD officers responded to Mr. Amin-Akbari's

911 call, and if applicable, the destruction of those recordings." Dkt. No. 64-4 at 2. The record indicates that neither Defendants, nor their designee, ever asked the responding officers what had become of their tapes, even after discovering that there was no record of the tapes' return. Dkt. No. 67-9 at 3 (Declaration of APD Legal Liason); Dkt. No. 74-2 at 5-6 (Deposition of Designee). Defendants failed to adequately prepare their designee, and even after finding that he was not the person "most competent" to testify about the storage or destruction of the tapes, now refuse to appoint anyone else to testify on this issue. This does not comply with Rule 30(b)(6). Defendants are **ORDERED** to designate one or more persons to testify for the City about whether the tapes from the two officers' cars were stored, if not, why not, and where they are, and if so, what their status is. The deposition shall take place at a mutually agreed-upon time and date.

### C. Records of Recent Complaints of Misconduct Against Individual Defendants

Amin-Akbari requests that the individual Defendants be ordered to provide records of all complaints ever sustained against them, and all complaints against them regardless of outcome, from the five years prior to June 10, 2011. Dkt. No. 64 at 8. Amin-Akbari argues the complaints may lead to evidence that the individual Defendants were acting in accordance with a policy, practice, or custom of the Austin Police Department on the night in question. *Id.* The documents may also be relevant impeachment evidence. Defendants have refused, citing relevance concerns. Dkt. No. 67 at 9. In particular, Defendants seem to be arguing that because records of previous complaints may not be admissible at trial, they are not discoverable. *See Id.* at 9-10. Information sought in discovery "need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." FED. R. CIV. P. 26(b)(1). As with his requests for reports regarding taxi cab drivers, Amin-Akbari's requests here appear reasonably calculated to lead to

relevant evidence. *See Gutierrez v. Benavides*, 292 F.R.D. 401, 405, n.3 (S.D. Tex 2013). Defendants are ordered to produce the reports.[5]

### D. Motion to Extend the Deadline for Completion of Discovery

Amin-Akbari filed his motion to extend the discovery deadline on May 13, 2014, requesting a three month extension. That three months has since passed.[6] In a sense, his original request is moot. Still, this Court has granted Amin-Akbari's requests for additional discovery in this case. Therefore, to the extent necessitated by the foregoing, Amin-Akbari's motion to extend the deadline for completion of discovery is **GRANTED**. The parties have **60** days to complete the discovery granted by this order.

### III. CONCLUSION

Based on the reasoning set forth above, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiff's Motion to Compel Deposition Testimony and Reimbursement of Costs (Dkt. No. 60); **DENIES** Defendants' Cross Motion for Limited Stay of Discovery with Respect to Punitive Damages Only and Request for Expedited Ruling (Dkt. No. 62); and **GRANTS** Plaintiff's Motion to Compel Discovery and Modify the Scheduling Order (Dkt. No. 64).

SIGNED this 16th day of September, 2014.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE

---

[5] Again, a Protective Order is in place in this case, which provides adequate assurances for the protection of responsive information.

[6] The motion was referred to this Court on August 28, 2014.