UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| AKBAR AMIN-AKBARI, | § | No. 1: 13-CV-472-DAE |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | |
| | § | |
| THE CITY OF AUSTIN, TEXAS, and | § | |
| MICHAEL BARGER, HENRY | § | |
| AGUILAR, RICHARD BOZELLI, and | § | |
| PHILLIP KELLY, in their individual | § | |
| capacities, | § | |
| | § | |
| Defendants. | § | |

ORDER (1) GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR JUDGMENT ON THE PLEADINGS; (2) GRANTING IN PART
AND DENYING IN PART PLAINTIFF'S MOTION TO AMEND COMPLAINT;
(3) GRANTING PLAINTIFF'S MOTION TO EXCLUDE EXPERT
TESTIMONY; (4) GRANTING DEFENDANTS' MOTION TO EXCLUDE
EXPERT TESTIMONY OF ROGER CLARK

On September 26, 2014, the Court heard argument on (1) Plaintiff's

Motion to Exclude Expert Testimony (Dkt. # 46); (2) Defendants' Motion to

Exclude Expert Testimony (Dkt. # 59); (3) Defendants' Motion for Judgment on

the Pleadings (Dkt. # 56); and (4) Plaintiff's Motion to Amend the Complaint (Dkt.

# 71).  Abigail Frank, Esq., and Wayne Krause-Yang, Esq., appeared on behalf of

Plaintiff.  Jaclyn Gerban, Esq., and Meghan Riley, Esq., represented Defendants.

After careful consideration of the arguments at the hearing and in the supporting

and opposing memoranda, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' Motion for Judgment on the Pleadings (Dkt. # 56); **GRANTS IN PART AND DENIES IN PART** Plaintiff's Motion to Amend (Dkt. # 71); **GRANTS** Plaintiff's Motion to Exclude Expert Testimony (Dkt. # 46); and **GRANTS** Defendants' Motion to Exclude Expert Testimony (Dkt. # 59).

<u>BACKGROUND</u>

Around midnight on the morning of June 10, 2011, Austin Police Department ("APD") officers allegedly commandeered Plaintiff Akbar Amin-Akbari's taxicab and forced him to transport an intoxicated individual. ("FAC," Dkt. # 32 ¶ 1.)

Plaintiff has earned a living as a taxicab driver for the past thirty years in Austin. (<u>Id.</u> ¶ 8.) On the evening of the incident, APD officers hailed Plaintiff's cab and proceeded to force a large intoxicated individual, Dustin Christopher Rowden ("Rowden"), towards the cab. (<u>Id.</u> ¶ 9.) Plaintiff attempted to refuse to transport Rowden because of his intoxication and combativeness. (<u>Id.</u> ¶ 10.) Nonetheless, officers ordered Plaintiff to transport Rowden. (<u>Id.</u>) According to Plaintiff, it took four officers to force Rowden into the taxicab; Rowden then tried to escape, but officers forced him back in. (<u>Id.</u>) Plaintiff again tried to refuse to transport Rowden, arguing that Rowden would not be able to pay for the ride. (<u>Id.</u> ¶ 11.) In response, officers ordered Plaintiff to drive Rowden to his home. (<u>Id.</u>)

2

Plaintiff began driving Rowden home via Interstate 35.  (Id. ¶ 12.)  On the drive, Rowden yelled racial slurs at Plaintiff on account of his Iranian heritage. (Id. ¶ 12.)  Plaintiff states that he feared the larger and belligerent Rowden and asked Rowden to allow him to drive safely.  (Id.)

Despite Plaintiff's request, Rowden began hitting Plaintiff over the head and ordered Plaintiff to get out of the cab.  (Id. ¶ 13.)  Rowden grabbed Plaintiff's hair and jerked his head back, so that he could no longer see the road. (Id.)  Rowden then proceeded to reach into the front seat and take the steering wheel, threatening that he was going to kill Plaintiff.  (Id. ¶ 14.)  Plaintiff states Rowden then tried to crawl into the front seat.  (Id. ¶ 15.)  This gave Plaintiff enough time to retake control of the steering wheel, exit the interstate, and drive into a nearby gas station parking lot.  (Id. ¶ 15.)  Plaintiff left the car and went to call the police.  (Id.)  However, Rowden followed him out of the car, hit Plaintiff on the head again, and knocked the phone from his hand.  (Id.)  Rowden kicked Plaintiff in the knee, forcing Plaintiff onto the ground where Rowden continued his attack.  (Id. ¶¶ 15–16.)

Two men witnessed the attack and ran to help Plaintiff by pulling Rowden off him.  (Id. ¶ 16.)  Police officers soon arrived and charged Rowden with "felony aggravated assault and injury to a disabled person."  (Id.)  Plaintiff states that as a result of the attack, he suffered severe head injuries and was unable to work for a

3

significant time period after the attack, both due to his physical injuries and the accompanying psychological trauma.  (Id.)

Plaintiff filed suit on June 7, 2013.  (Dkt. # 1.)  On December 18, 2013, Plaintiff filed his First Amended Complaint ("FAC").  On April 21, 2014, Plaintiff moved to exclude portions of the expert testimony of Albert Rodriguez, an expert for Defendants.  (Dkt. # 46.)  On May 1, 2014, Defendants Henry Aguilar, Michael Barger, Richard Bozelli, and the City of Austin (the "City") moved for a judgment on the pleadings with respect to all of Plaintiff's claims except those for Monell liability against the City.  (Dkt. # 56.)  On May 3, 2014, Defendants Aguilar, Barger, Bozelli, Kelly, and the City moved to exclude the testimony of Roger Clark, an expert for Plaintiff.  (Dkt. # 59.)  On May 16, 2014, Plaintiff filed a Motion to Amend Complaint in Response to Motion for Judgment on the Pleadings.  (Dkt. # 71.)

<u>LEGAL STANDARDS</u>

I.     <u>Judgment on the Pleadings</u>

A motion made pursuant to Rule 12(c) of the Federal Rules of Civil Procedure for a judgment on the pleadings is governed by the same standards as a motion under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim.  Morris v. PLIVA, Inc., 713 F.3d 774, 776 (5th Cir. 2013).

Therefore, a Court must address whether the complaint states a claim for which relief may be granted.  See Fed. R. Evid. 12(b)(6).

A proper pleading under the Federal Rules of Civil Procedure must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  The complaint must contain more than mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 555).

In reviewing a motion to dismiss, a court accepts as true all of the well-pleaded factual allegations in the complaint.  See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  In order to survive a motion to dismiss, a claim must allege "enough facts to state a claim to relief that is plausible on its face."  Twombly, 550 U.S. at 547.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 677.

In adjudicating a motion to dismiss, the Court considers only the pleadings and those matters of which it may take judicial notice under Rule 201 of

the Federal Rules of Evidence.  Lovelace v. Software Spectrum Inc., 78 F.3d 1015,

1018–19 (5th Cir. 1996) (adopting a rule that a court in a securities fraud action

may take judicial notice of relevant public disclosure documents required to be

filed with the SEC); Hurd v. BAC Home Loans Servicing, LP, 880 F. Supp. 2d

747, 758 (N.D. Tex. 2012) (taking judicial notice of matters of public record and

considering documents attached to a motion to dismiss as part of the pleadings

because they were central to the claims in the complaint).

II.    Motion to Amend

Under Rule 15(a) of the Federal Rules of Civil Procedure, "if the

pleading is one to which a responsive pleading is required, [a party may amend

within] 21 days after service of a responsive pleading or 21 days after service of a

motion under Rule 12(b), (e), or (f), whichever is earlier."  Fed. R. Civ.

P. 15(a)(1)(B).  "In all other cases, a party may amend its pleading only with the

opposing party's written consent or the court's leave.  The court should freely give

leave when justice so requires."  Fed. R. Civ. P. 15(a)(2).

In considering whether to grant or deny leave to amend, the court

"may consider such factors as undue delay, bad faith or dilatory motive on the part

of the movant, . . . undue prejudice to the opposing party, and futility of

amendment."  In re Southmark Corp., 88 F.3d 311, 314–15 (5th Cir. 1996); see

also Jones v. Robinson Prop. Grp. L.P., 427 F.3d 987, 994 (5th Cir. 2005).

A trial court may properly deny leave to amend "where the proposed amendment would be futile because it could not survive a motion to dismiss." Rio Grande Royalty Co., Inc. v. Energy Transfer Partners, L.P., 620 F.3d 465, 468 (5th Cir. 2010). An amendment is futile when "the amended complaint would fail to state a claim upon which relief could be granted." Stripling v. Jordan Prod. Co., 234 F.3d 863, 873 (5th Cir. 2000). Frequently, a determination of whether a proposed amended complaint would be subject to dismissal would require "a detailed analysis of the proposed pleading" in relation to the causes of action asserted. Moore v. Dallas Indep. Sch. Dist., 557 F. Supp. 2d 755, 759 (N.D. Tex. 2008). To avoid this premature determination of the merits, the standard for denying an amendment based on futility is that "[i]f a proposed amendment is not clearly futile, then denial of leave to amend is improper." Id. (quoting Charles Alan Wright, et al., Federal Practice and Procedure, § 1487, at 637, 642 (2d ed. 1990)).

However, it is Rule 16(b) of the Federal Rules of Civil Procedure that "governs the amendment of pleadings 'after a scheduling order's deadline to amend has expired.'" Filgueira v. U.S. Bank Nat. Ass'n, 734 F.3d 420, 422 (5th Cir. 2013). Rule 16(b)(4) provides that "[a] schedule may be modified only for good cause and with the judge's consent." The Fifth Circuit maintains that for a "post-deadline amendment, a party must show good cause for not meeting the

deadline . . . ."  Fahim v. Marriott Hotel Servs., Inc., 551 F.3d 344, 348 (5th Cir.

2008) (internal citations and quotation marks omitted).  In determining whether

good cause exists, a court looks to "(1) the explanation for the failure to timely

move for leave to amend; (2) the importance of the amendment; (3) potential

prejudice in allowing the amendment; and (4) the availability of a continuance to

cure such prejudice."  Id. (internal quotation marks omitted).

III.    Motion to Exclude Expert Testimony

Federal Rule of Evidence 702 provides:

A witness who is qualified as an expert by knowledge, skill,
experience, training, or education may testify in the form of an
opinion or otherwise if:
    a.  the expert's scientific, technical, or other specialized
       knowledge will help the trier of fact to understand the
       evidence or to determine a fact in issue;
    b.  the testimony is based on sufficient facts or data;
    c.  the testimony is the product of reliable principles and
       methods;
    d.  the expert has reliably applied the principles and methods to
       the facts of the case.

Fed. R. Evid. 702.  This rule lays responsibility on the court to "ensure that any

and all scientific testimony or evidence admitted is not only relevant, but reliable."

Daubert v. Merrell Dow Pharma., Inc., 509 U.S. 579, 589 (1993).

"In rulings on the admissibility of expert opinion evidence the trial

court has broad discretion . . . ."  Wellogix, Inc. v. Accenture, L.L.P., 716 F.3d

867, 881 (5th Cir. 2013) (internal citations and quotation marks omitted).  The

Fifth Circuit maintains that district courts must "function as gatekeepers and permit only reliable and relevant expert testimony to be presented to the jury." Wilson v. Woods, 163 F.3d 935, 937 (5th Cir. 1999). It is the role of the district court to assure "that the proffered witness is qualified to testify by virtue of his 'knowledge, skill, experience, training, or education.'" Id. (quoting Fed. R. Evid. 702). A court "should refuse to allow an expert witness to testify if the witness is not qualified to testify in a particular field or on a given subject." Id. However, if an expert's testimony constitutes shaky, but admissible evidence, the court should rely on "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof" to mitigate the shakiness of the testimony. Id. (quoting Pipitone v. Biomatrix, Inc., 288 F.3d 239, 250 (5th Cir. 2002)). "Courts act as gatekeepers of expert testimony 'to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.'" Recursion Software, Inc. v. Double-Take Software, Inc., No. 4:10-CV-403, 2012 WL 1576252,*2 (E.D. Tex. May 4, 2012) (quoting Kumho Tire Co. v. Carmichael, 526 U.S. 137, 152 (1999)).

> To be reliable and therefore admissible under Rule 702 of the Federal Rules of Evidence, expert testimony as to a scientific, technical, or other specialized area must: (1) assist the trier of fact to understand the evidence or to determine a fact in issue; (2) be based upon sufficient facts or data; (3) be the product of reliable principles and

methods; (4) and have reliably apply the principles and methods to the facts.

Padre Enterprises, Inc. v. Rhea, No. 4:11CV674, 2013 WL 4284925, at *1 (E.D. Tex. Aug. 13, 2013).  In determining whether testimony is reliable, the court considers numerous factors including, "(1) whether the expert's theory or technique can be or has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error of the challenged method; and (4) whether the theory or technique is generally accepted in the relevant scientific community." Daubert, 509 U.S. at 593–94.  In evaluating these factors, the court must focus on the expert's "principles and methodology, not on the conclusions" generated. Id. at 594.  "[I]n a jury trial setting, the Court's role under Daubert is not to weigh the expert testimony to the point of supplanting the jury's fact-finding role; instead, the Court's role is limited to that of a gatekeeper, ensuring that the evidence in dispute is at least sufficiently reliable and relevant to the issue before the jury that it is appropriate for the jury's consideration." Retractable Tech., Inc. v. Becton, Dickinson and Co., No. 2:08-CV-16-LED-RSP, 2013 WL 4574258, at *1 (E.D. Tex. Aug. 27, 2013).

"In addition to being reliable, expert testimony must 'help the trier of fact to understand the evidence or to determine a fact in issue.'" Roman v. Western Mfg., Inc., 691 F.3d 686, 694 (5th Cir. 2012) (citing Fed. R. Evid. 702(a)).  Under Rule 702, this means that the proffered expert testimony must be

10

relevant.  Id.  "Expert testimony which does not relate to any issue in the case is not relevant, and ergo, non-helpful."  Id. (quoting Daubert, 509 U.S. at 591 (internal quotation marks and citations omitted)).  "Expert testimony is admissible only if the proponent demonstrates that: (1) the expert is qualified; (2) the evidence is relevant to the case; and (3) the evidence is reliable."  Watkins v. Telsmith, Inc., 121 F.3d 984, 988–89 (5th Cir. 1997).

"The burden to demonstrate that the expert's findings and conclusions are based on valid scientific method, and are therefore reliable, is placed on the party seeking its admission."  Castellow v. Chevron USA, 97 F. Supp. 2d 780, 783 (S.D. Tex. 2000).

## DISCUSSION

## I.   Judgment on the Pleadings

Defendants have moved for judgment on the pleadings for all claims, except Plaintiff's Monell claim, which alleges that the City has a pattern, custom, or policy of commandeering taxicabs.  (Dkt. # 56.)  Plaintiff's First Amended Complaint (Dkt. # 32) alleges claims for (1) state-created danger against all Defendants; (2) unreasonable search and seizure against all Defendants; (3) deprivation of liberty and property without due process against all Defendants; and (4) a practice and custom of commandeering taxicabs against only the City of Austin.  (Dkt. # 32.)

First, Defendants contend that all claims against the individual officers should be dismissed because they are barred by the statute of limitations. (Dkt. # 56 at 3–4.)  Plaintiff argues that his claims are not barred by the statute of limitations because they relate back to the date of his original Complaint.  (Dkt. # 70 at 4–5.)

Second, Defendants argue that Plaintiff's claim predicated on a theory of a state-created danger must be dismissed because this theory has not been recognized in the Fifth Circuit.  (Dkt. # 56 at 5–6.)  In response, Plaintiff argues that although the Fifth Circuit has not yet explicitly recognized a state-created danger theory of liability, it has outlined what the necessary elements for that cause of action would be, and therefore, this Court should entertain his claim.  (Dkt. # 70 at 8.)

Third, Defendants argue that Plaintiff's claims for unreasonable seizure, due process, and state-created danger are premised on respondeat superior liability and therefore cannot be brought against the City.  (Dkt. # 56 at 6–7.)  Plaintiff contends that these claims are not predicated on respondeat superior liability, but rather that the constitutional violations of which he complains arose from the City's policy and custom of commandeering taxicabs.  (Dkt. # 70 at 9.)

A.    Statute of Limitations as a Bar

All of Plaintiff's claims against the named officers are pled pursuant to 42 U.S.C. § 1983.  The statute of limitations for § 1983 claims is found by looking to the state statute of limitations governing personal injury claims. Piotrowski v. City of Houston, 237 F.3d 567, 576 (5th Cir. 2001).  In Texas, the statute of limitations for personal injury claims is two years.  Id.  Therefore, because the incident of which Plaintiff complains occurred on June 10, 2011, any claim brought after June 10, 2013 is barred by the statute of limitations.

On June 7, 2013, Plaintiff filed suit against the City, Craig Smith, Joseph Brown, Russell Smith, Noel Guerin, Brandon Bullock, and John Doe officers.  (Dkt. # 1.)  On December 17, 2013, Plaintiff sought leave to amend his complaint stating, "[t]hrough discovery in this case, he has now identified the officers:  Michael Barger, Henry Aguilar, Richard Bozelli, and Phillip Kelly." (Dkt. # 30 at 1.)  Plaintiff stated he wished "to amend his complaint to name Officers Barger, Aguilar, Bozelli, and Kelly as Defendants and remove references to 'John Doe Officers.'"  (Id.)  Plaintiff also sought permission "to remove the state law claims he maintained against John Doe Officers, in order to simplify the lawsuit and avoid redundancy."  (Id.)  The Court granted Plaintiff leave to amend.

The issue now before the Court is whether the claims against these now-named officers, Michael Barger, Henry Aguilar, Richard Bozelli, and Phillip Kelly, relate back to the date of the original complaint.

Rule 15(c) of the Federal Rules of Civil Procedure provides that if an amendment to a complaint names a different defendant, it will only relate back

> if the claim asserted arose out of the same conduct set forth in the original pleading and the new defendant, within the time provided by Federal Rule of Civil Procedure 4(m), received notice of the filing of the original action so that he would not be prejudiced in presenting a defense on the merits, and the new defendant "knew or should have known that but for a mistake concerning the identity of the proper party, the action would have been brought against the new party."

Green v. Doe, 260 F. App'x 717, 719 (5th Cir. 2007) (quoting Fed. R. Civ. P. 15(c)(3)).

In order to satisfy Rule 15(c) and for an amendment to relate back, a party must show that, within 120 days, the new defendant received notice (either actual or constructive) that but for a mistake by the plaintiff, the action would have been brought against him. Therefore, Rule 15 lays out a three-part test that must be met before an amendment will relate back:  (1) the plaintiff must have made a mistake regarding the identity of a party; (2) the plaintiff must show a defendant had actual or constructive notice of the plaintiff's claims; and (3) the plaintiff must show that defendant had actual or constructive notice within 120 days.

1.   <u>Notice</u>

The Fifth Circuit states that notice may be inferred "if there is an identity of interest between the original defendant and the defendant sought to be added or substituted." <u>Jacobsen v. Osborne</u>, 133 F.3d 315, 320 (5th Cir. 1998). The court elaborated stating, "[i]dentity of interest generally means that the parties are so closely related in their business operations or other activities that the institution of an action against one serves to provide notice of the litigation to the other. In this regard, notice may be imputed to the new party through shared counsel." <u>Id.</u> (internal citations and quotation marks omitted).

2.   <u>Mistake</u>

The <u>Jacobsen</u> court made clear that in the Fifth Circuit, a party's choice to use John Doe and later to substitute a named defendant does not constitute a mistake in identifying the defendant. 133 F.3d at 320–21. The Fifth Circuit maintains that "for a 'John Doe' defendant, there [is] no 'mistake' in identifying the correct defendant; rather, the problem [is] not being able to identify that defendant." <u>Id.</u> at 321. Therefore, a party's amendment changing a defendant from a 'John Doe' to a named individual does not qualify as a mistake allowing the amendment to relate back to the original complaint.[1] <u>Id.</u> at 321–22.

---

[1]In contrast, the Fifth Circuit has found that an amendment to a complaint changing the statement that a named officer was sued in his official capacity to the statement

"Rule 15(c) does not apply when John Doe defendants are named after the statute of limitations has run." <u>Myers v. Nash</u>, 464 F. App'x 348, 349 (5th Cir. 2012) (citing <u>Whitt v. Stephens Cnty.</u>, 529 F.3d 278, 282–83 (5th Cir. 2008)).  A district court may properly deny leave to amend a complaint to name parties previously identified as 'John Doe" because "an amendment to substitute a named party for a John Doe does not relate back under rule 15(c)." <u>Whitt</u>, 529 F.3d at 283; <u>see also</u> <u>Rutledge v. United States</u>, 161 F.3d 7 (5th Cir. 1998) ("[R]elation back is inapplicable because under our precedents Rule 15(c) does not permit substitution of named defendants for 'John Doe' defendants.").  Rule 15(c) "is meant to allow an amendment changing the name of a party to relate back to the original complaint only if the change is the result of an error, such as a misnomer or misidentification." <u>Jacobsen</u>, 133 F.3d at 320.

In <u>Green v. Doe</u>, 260 F. App'x 717 (5th Cir. 2007), Green, a prison inmate sued a John Doe correctional officer. <u>Id.</u> at 718.  The district court denied Green's request to conduct discovery to identify the officer before the limitations period had run.  <u>Id.</u>  The district court then later dismissed Green's case when, after discovering the name of the officer, he amended his complaint accordingly.  The district court found that the claims did not relate back under Federal Rule of Civil

that he was sued in his individual capacity does relate back to the initial complaint. <u>Sanders-Burns v. City of Plano</u>, 594 F.3d 366, 373 (5th Cir. 2010).

Procedure 15(c).  Id.  On appeal, the Fifth Circuit found that because the

information to identify John Doe should have been relatively easily discovered, the

District Court erred in denying Green the opportunity to conduct discovery, and the

statute of limitations was equitably tolled.  Id.  The Fifth Circuit found there was

no need for the claim to relate back because the statute of limitations had been

equitably tolled.  Id.  The Fifth Circuit recognized that the use of the "John Doe" is

appropriate when a party needs to "conduct discovery backed by the authority of

the court. . . . [I]t serves the legitimate function of giving a plaintiff the opportunity

to identify, through discovery, unknown defendants."  Id.  The Fifth Circuit

distinguished this case from Jacobson because the delays in Jacobson were due

entirely to the actions of the Plaintiff:

> Plaintiff had the assistance of discovery [in Jacobson] but failed to
> take advantage of that power and depose witnesses in a timely manner
> that would have allowed him to identify the 'John Doe' and amend his
> complaint.  Green, in contrast, sued almost eleven months before the
> running of the statute and, given the specificity of knowledge he had,
> if he had not been denied discovery he would have had sufficient time
> to identify the officer and amend his complaint under rule 15(a)
> without need to relate back under rule 15(c).

Green, 260 F. App'x at 719–20 (internal citations omitted).

Plaintiff here argues that he indeed was mistaken regarding the named

officers identities, and therefore his claims should relate back.  However, it is clear

from Plaintiff's request to amend his complaint, that he sued the "John Doe"

officers because he had not yet uncovered their identities.  Once he learned the

17

appropriate names, he replaced the John Does with the named Defendants.  The

Fifth Circuit is clear that the later discovery of the identity of a defendant

previously named as "John Doe" does not constitute a mistake under Rule 15(c), as

required to allow relation back of claims.

      The Court does not disagree that Plaintiff has met the notice

requirement of Rule 15(c); however, the Fifth Circuit requires that before an

amended complaint can relate back, Plaintiff must show that there was a mistake in

the identification of Defendants.  Because the later discovery of the actual name of

a John Doe defendant does not constitute a mistake, Plaintiff's claims against the

now-named defendants do not relate back to the filing of his initial complaint.

      Although the Fifth Circuit is clear that Plaintiff's amendment naming

the John Does does not relate back to the filing of the Original Complaint, the

Court turns to examine whether there may be grounds for equitably tolling the

statute of limitations, as in Green.

      As stated above, the applicable statute of limitations for § 1983 claims

is borrowed from Texas state law.  Rotella v. Penderson, 144 F.3d 892, 897 (5th

Cir. 1998).  "Because the Texas statute of limitations is borrowed in § 1983 cases,

Texas' equitable tolling principles also control."  Id.  "The federal court may

disregard the state tolling rule only if it is inconsistent with federal policy."

Spencer v. Doe, No. 3:10–CV–1801–N–BH, 2011 WL 3444336, at *3 (N.D. Tex.

June 2, 2011).  "[F]ederal law requires that litigants diligently pursue their actions before equitable tolling becomes available."  Id.

"Texas courts sparingly apply equitable tolling and look, inter alia, to whether a plaintiff diligently pursued his rights; litigants may not use the doctrine to avoid the consequences of their own negligence."  Myers, 464 F. App'x at 349 (internal quotation marks omitted).  The Green court found that a statute of limitations was equitably tolled when Plaintiff, through numerous motions for discovery, diligently attempted to ascertain the identities of the parties.  The Fifth Circuit found that it was the district court's decision denying discovery that prevented Plaintiff from identifying the correct party before the statute of limitations expired.  260 F. App'x at 719.

In contrast, in Spencer, the court found that because the plaintiff had filed suit against John Doe defendants only two weeks before the expiration of the limitations period, he had failed to diligently pursue his claims.  Spencer, 2011 WL 3444336, at *3.  The Spencer court found that the fact plaintiff, a prisoner, did not have access to the law library during much of the limitations period was not enough to excuse his lack of diligence.  Id.  In finding that the plaintiff was not entitled to equitable tolling of the statute of limitations, the court reasoned that "[w]hile the Fifth Circuit has held that a plaintiff should be given a reasonable time to conduct discovery, [the plaintiff] did not allow any time for discovery [of the

19

'John Doe' defendants'] identities before the statute of limitations elapsed . . . ."

Id.

Similarly, in Nazerzadeh v. Harris Cnty., the court found that equitably tolling the statute of limitations was not warranted because the plaintiff "filed suit so late [that] he could not conduct discovery into the . . . officers' identities before the limitations had run." No. H–08–0499, 2010 WL 3817149 (S.D. Tex. Sept. 27, 2010).

Here, Plaintiff has provided no explanation for his decision to file his complaint on June 7, 2013, only days before the expiration of the statute of limitations period. (See Dkt. # 1.) Because Plaintiff's own actions precluded his ability to identify the proper names of the John Doe defendants by not allowing himself time to conduct discovery, Plaintiff has not demonstrated that the Court should equitably toll the limitations period.

Therefore, because Plaintiff's claims against the individual officers were filed on December 18, 2013, after the limitations period expired, and because Plaintiff is not entitled to equitable tolling of the limitations period, the claims against the individual officers are dismissed as time-barred.

Plaintiff's remaining claims are (1) a claim for state-created danger against the City; (2) a claim for unreasonable seizure against the City; (3) a claim

for deprivation of property without due process against the City; and (4) a claim that the City has a practice of commandeering taxicabs.  (See dkt. # 32.)

      B.    <u>State-Created Danger Theory of Liability</u>

        Plaintiff asserts a claim that the City created a dangerous situation that violated Plaintiff's Fourteenth Amendment right to bodily integrity.  (Dkt. # 32 ¶¶ 19–20.)  Specifically, Plaintiff avers that "[b]y forcing [him], against his will, to transport an aggressive, intoxicated man who was behaving violently, Defendants deliberately and affirmatively created a dangerous situation that proximately caused his severe injuries and could easily [have] caused his death."  (<u>Id.</u> ¶ 20.)

        Defendants argue that this "state-created danger" theory of liability is not recognized in the Fifth Circuit.  (Dkt. # 56 at 5.)

        The Fifth Circuit has yet to adopt a "state-created danger" theory of liability.  <u>See</u> <u>Estate of Lance v. Lewisville Indep. Sch. Dist.</u>, 743 F.3d 982, 1001 (5th Cir. 2014) (recognizing that the Fifth Circuit has never adopted the state-created danger theory of liability); <u>Whitley v. Hanna</u>, 726 F.3d 631, 639 n.5 (5th Cir. 2013) (same); <u>Doe ex rel. Magee v. Covington Cnty. Sch. Dist. Ex rel. Keys</u>, 675 F.3d 849, 864 (5ht Cir. 2012) (same).  However, the Fifth Circuit has stated that if state-created danger were a viable theory of liability, it would require a plaintiff to prove "(1) that defendants used their authority to create a dangerous environment for the plaintiff and (2) that the defendants acted with deliberate

indifference to the plight of the plaintiff."  Id. (internal citations and quotation marks omitted).  The Fifth Circuit continued:

> The second element is then subdivided into three prongs, which combine to subsume the first original element, specifically, a plaintiff would have to show that (1) the environment created by the state actor is dangerous, (2) the state actor must know it is dangerous (deliberate indifference), and (3) the state actor must have used its authority to create an opportunity that would not otherwise have existed for the third party's crime to occur.

Id. (internal citations and quotation marks omitted).

Plaintiff's proposed amended complaint asserts that the City's policy of commandeering taxicabs was the moving force that caused his injuries under the state-created danger theory.  (Dkt. # 71-1).

However, because the Fifth Circuit has not recognized this cause of action as viable, the Court declines to do so here.  Therefore, there is no need to address whether Plaintiff has adequately pled the elements of the proposed state-created danger theory.  Plaintiff's claims under a state-created danger theory of liability are **DISMISSED.**

C.    Plaintiff's Theory of Liability Underlying the Alleged Constitutional Violations

The remaining claims that Defendants challenge are Plaintiff's claims for (1) unreasonable search and seizure against the City and (2) deprivation of liberty without due process against the City.  (Dkt. # 32.)

Defendants argue that both of these claims are premised only on respondeat superior liability.  In contrast, Plaintiff argues that these claims are not based in respondeat superior liability, but rather in <u>Monell</u> liability because the City's policy of commandeering taxicabs was the moving force behind the constitutional violations.  (Dkt. # 70 at 9.)  In Plaintiff's proposed amended complaint, he makes clear that in forcing Rowden into his taxicab, the officers were acting in accordance with the City's custom, policy, or practice of commandeering taxicabs, and it was that policy that led to his injuries.

Section 1983 was not intended to be used to hold municipalities liable "unless action pursuant to official municipal policy of some nature caused a constitutional tort."  <u>Monell v. Dep't of Social Services of City of New York</u>, 436 U.S. 658, 691.  The Supreme Court maintains that "a municipality cannot be held liable <u>solely</u> because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a <u>respondeat superior</u> theory."  <u>Id.</u>

Therefore, the issue this Court must address is whether Plaintiff's Fourth and Fourteenth Amendment claims are predicated on respondeat superior liability or on <u>Monell</u> liability.

Plaintiff's First Amended Complaint implicitly, and his Proposed Second Amended Complaint explicitly, indicates that his claims arise from the officer's actions pursuant to the City's custom or policy of commandeering

23

taxicabs.  Plaintiff does not argue that the City should be held liable merely because it employed the defendant officers, but rather because it had a policy, which the officers followed that led to Plaintiff's injuries.

Because the Court finds that Plaintiff's claims are premised on <u>Monell</u> liability rather than respondeat superior liability, the Court **DENIES** Defendants' Motion for Judgment on the Pleadings with respect to these claims against the City.

II.    <u>Second Motion to Amend</u>

In response to Defendant's Motion for Judgment on the Pleadings, Plaintiff moved seeking leave to amend his complaint.  (Dkt. # 71.)  First, Plaintiff requests leave to amend his complaint to clarify that his claims against the named officers relate back to his original Complaint.  (<u>Id.</u>) Second, Plaintiff seeks to add a claim against the City and Barger for failure to train and supervise its officers. (<u>Id.</u>)

Specifically, Plaintiff seeks to clarify his claims that each of the constitutional violations he alleges (state-created danger, unreasonable seizure, and deprivation of liberty and property without due process) was the result of the custom, practice, and policy of the City to commandeer taxicabs.  (<u>Id.</u> at 4.)  As to the failure to train claim, Plaintiff asserts that the Court should permit him to add this claim because he discovered the basis for it during discovery. (<u>Id.</u>)  Plaintiff

alleges that the City did not properly train the officers regarding Austin City Code § 13-2-346 that permits taxicab drivers to refuse service to individuals.  (Id.)

As a preliminary matter, the Court has already found that the claims against the officers do not relate back to the filing of the original complaint, and are therefore, time barred.  Plaintiff's request to amend these claims in a new complaint would be futile—there are no facts or allegations that could be pled that would overcome the statute of limitations.  Therefore, Plaintiff's request to amend these claims is **DENIED.**

Defendants argue that Plaintiff should not be permitted to amend his state created danger claim, his unreasonable seizure claim, or his due process claim because these are still essentially claims predicated on respondeat superior liability. (Dkt. # 77 at 2.)  Defendants argue that adding the phrase that the City's policy was the moving force behind these violations does not alter the fact that these are respondeat superior claims and also are superfluous because the only policy Plaintiff identifies is that of commandeering taxicabs.  (Id.)

The Court finds that Plaintiff's request to clarify that these claims are premised on Monell liability, rather than respondeat superior liability, should be granted.  This amendment merely clarifies the claims, is not a truly substantive amendment, and will not prejudice the defendants in any way.  Therefore, Plaintiff's motion to amend his complaint on this point is **GRANTED.**

Finally, Plaintiff seeks to amend his complaint to include a claim against the City and Barger for failure to train and supervise APD officers. (Dkt. # 71 at 4.) Defendants argue that to add a failure to train claim, Plaintiff must demonstrate good cause, and he has not done so. (Dkt. # 77 at 2–3.)

The deadline to amend pleadings passed on January 3, 2014, therefore Plaintiff's request to amend his complaint to add an additional claim is governed by Rule 16 of the Federal Rules of Civil Procedure that requires Plaintiff to demonstrate good cause.

In seeking leave to amend his complaint to include a claim for failure to train, Plaintiff asserts that he seeks to plead this claim now because of "information gleaned in discovery." (Dkt. # 71 at 4.) Plaintiff provides no other explanation for his tardiness in asserting this claim. Plaintiff has not even made an argument that he can show his delay was due to good cause. Therefore, the Court finds that Plaintiff has not shown good cause to amend his complaint to add a claim for failure to train and supervise. The Court **DENIES** Plaintiff's motion to amend his complaint to include this claim against the City and Barger.

III.   Motion to Exclude Expert Testimony

    A.   Plaintiff's Motion to Exclude Expert Testimony of Albert Rodriguez

Plaintiff moved to exclude portions of Albert Rodriguez's expert report because (1) his testimony contains "non-expert opinions weighing evidence

and evaluating . . . credibility"; and (2) to the extent his testimony shall be used in rebuttal, it is improper because Defendants did not timely designate him as a rebuttal witness.  (Dkt. # 46.)  Predicated on these arguments, Plaintiff requests that the Court exclude Rodriguez's testimony found in paragraphs 26, 27, 46–54, and 56–60 of his expert report.  (Id. at 6.)

In response, Defendants argue that Plaintiff's assertion that Rodriguez was not designated as a rebuttal expert witness is a misreading of the scheduling order. (Dkt. # 53.)  Additionally, Defendants argue that none of the contested testimony should be excluded because it is all within Rodriguez's ken.  (Id. at 10.) Defendants state, "[Rodriguez] is qualified, as shown by his resume and Affidavit, as a law enforcement investigator and expert to testify as to police procedure and training due to his education, training, experience, current practice, and expertise in evaluating police conduct."  Id.  Similarly, Rodriguez's expert report states,

> My education, training, and experience provides me with technical,
> professional, and other specialized knowledge that will assist a lay
> person in understanding how law enforcement officers are trained and
> why they are trained as they are.  This knowledge is the key to
> reaching a reliable evaluation of law enforcement officers' conduct.

("Rodriguez Report," Dkt. # 46-1 ¶ 6.)

As a preliminary matter, the Court finds that Rodriguez is qualified to testify as an expert in how and why law enforcement officers are trained as they are.  Rodriguez's Report details his more than thirty years of experience as a law

27

enforcement officer, and lists the many training academies at both the state and federal level that he has attended and taught at.  (Rodriguez Report ¶¶ 1–6.) However, Plaintiff argues that the testimony to which he objects falls outside of this expertise and should be excluded pursuant to Federal Rule of Civil Procedure 702.  The Court will evaluate each piece of challenged Testimony.

          1.     <u>Paragraphs 26, 27</u>

Plaintiff challenges these paragraphs that only comment that Plaintiff's expert, Roger Clark, has improperly made credibility determinations. (Dkt. # 46 at 5.)  Plaintiff argues that although Rodriguez was timely designated as an expert, he was not designated as a rebuttal expert as required by the Scheduling Order.

Because the Court finds that Rodriguez's testimony in these two paragraphs is irrelevant, the Court declines to address whether Rodriguez was timely designated; these paragraphs will be excluded pursuant to Rule 702.

In these paragraphs, Rodriguez states first that he does not make credibility determinations and second that Clark has improperly made credibility determinations.  Rodriguez does not challenge Clark's methodology, only that his opinion is based on a biased set of facts.  It is unnecessary to have expert testimony regarding whether another expert has made a credibility determination.  Therefore, the Court **GRANTS** Plaintiff's motion with respect to these paragraphs.

2.     Paragraphs 46–50

Plaintiff next challenges Rodriguez's testimony that Plaintiff provided statements to law enforcement officers that did not allege that Rowden was combative or dangerous prior to entering into the taxicab, and that Plaintiff only alleged Rowden was being combative in this lawsuit.

The Court finds that in these paragraphs, Rodriguez is merely quoting from documentary evidence and pointing out that some evidence is contradictory. This opinion is not of a type that will assist a trier of fact to understand the issues of this case.  A jury is just as competent as Rodriguez to recognize that there are inconsistent pieces of evidence in this case.  Additionally, pointing out that Plaintiff may have characterized his encounter with Defendants differently before and after the filing of the lawsuit is well outside of Defendant's stated expertise in how and why law enforcement officers are trained as they are.

Therefore, because Rodriguez's opinions in these paragraphs are not within his field of expertise and would not be helpful to a trier of fact, Plaintiff's motion to exclude Rodriguez's testimony contained in these paragraphs is **GRANTED.**

3.      Paragraphs 51–54, 56, 60

Plaintiff challenges these paragraphs arguing that Rodriguez is doing nothing more than commenting on discrepancies in the witness statements Plaintiff has obtained and the credibility and relevance of those witness statements.

The Court agrees that these paragraphs are not the proper subject of expert testimony.  As stated above, these opinions are not helpful to the trier of fact:  it is the province of the jury to evaluate the credibility of witnesses and weigh the (occasionally conflicting) evidence before it.  There is no need for an expert in law enforcement training to offer his opinion as to which witnesses should be believed.  Therefore, because these opinions are not within Rodriguez's expertise and would not be helpful to a jury, the Court **GRANTS** Plaintiff's motion regarding this testimony.

4.      Paragraph 57

Here, Plaintiff argues that Rodriguez's testimony does nothing other than comment that Plaintiff had the option to stop driving and call for the police if he did not want to give Rowden a ride.  (Dkt. # 46-1 ¶ 57.)  The Court finds that this opinion is outside Rodriguez's expertise in law enforcement training, and additionally would not be helpful to a trier of fact because it does no more than comment on whether Plaintiff's story is credible.  Therefore, Plaintiff's Motion is **GRANTED** as to this testimony.

5.     Reliability Challenges: Paragraphs 46–54, 56–60

The Court has already excluded paragraphs 46–54, 56, 57, 60.

Therefore, the Court will address only the remaining paragraphs:  58 and 59.

Plaintiff argues that Rodriguez has no specialized analysis or basis for his opinions

in these paragraphs.  (Dkt. # 46 at 5.)

All Rodriguez does in these paragraphs is relate Plaintiff's testimony

from a previous lawsuit and state that it contradicts other statements Plaintiff has

made.  As discussed above, Rodriguez's expertise is in law enforcement training

and procedures.  The Court can find no basis for permitting him to testify about the

meaning of inconsistent statements.  Additionally, also as discussed above, the jury

does not need an expert to point out inconsistencies in the evidence in this case.

Therefore, Plaintiff's motion is **GRANTED** as to these paragraphs.

After a careful evaluation of Rodriguez's Report, and Plaintiff's

challenges to it, the Court finds that the challenged paragraphs include testimony

outside of Rodriguez's expertise or testimony that would not be relevant or helpful

to a trier of fact.  Therefore, Plaintiff's Motion is **GRANTED** and the Court

**STRIKES Rodriguez's testimony contained in paragraphs 26, 27, 46–54, and**

**56–60 of his Report.**

B.     <u>Defendants' Motion to Exclude Expert Testimony of Roger Clark</u>

Defendants moved to exclude the testimony of Roger Clark regarding his opinions generally, and specifically on the issues of whether the City has a policy or custom of commandeering taxicabs and whether the city did, in fact, commandeer Plaintiff's taxicab.  (Dkt. # 59.)  Defendants argue that Clark's testimony is unnecessary, unreliable, and even if relevant, is highly prejudicial and excludable under Rule 403 of the Federal Rules of Civil Procedure.  (<u>Id.</u> at 1.) Defendants challenge each of Clark's opinions.

In response, Plaintiff argues that Clark's opinions are reliable, well-founded, and supported by sufficient facts.  (Dkt. # 63 at 2.)  Further, Plaintiff argues that the Court should not consider Defendant's Motion to Exclude the Expert Testimony of Roger Clark because it was filed without a certificate of conference and although the motion was timely filed, it did not include one of the exhibits.  (<u>Id.</u> at 9.)

As a preliminary matter, the Court advises Defendants to include a certificate of conference as required with future filings with this Court. (<u>See</u> W.D. Tex. Loc. R. CV-7(i).)   However, the Court will nonetheless address the merits of Defendants' motion.  <u>Daubert</u> obligates this Court to perform as a gatekeeper, only permitting expert testimony that meets the standards of Rule 702.  Regardless of whether Defendants timely filed a motion to exclude the testimony of Clark, this

Court is obligated to ensure that his testimony is relevant, reliable, and helpful to the trier of fact.

Clark offers three opinions:

Opinion 1:  In forcing [Plaintiff] to transport Dustin Rowden, who was obviously intoxicated, aggressive, and behaving violently, Officers Barger, Aguilar, Bozelli, and Kelly were deliberately indifferent to [Plaintiff's] safety and knowingly created a dangerous situation that proximately caused his injuries.  Any reasonable officer could have foreseen the obvious and likely danger to [Plaintiff].

Opinion 2:  Sergeant Barger, and Officers Aguilar, Bozelli, and Kelly, even as police officers, did not have any lawful right/foundation to commandeer [Plaintiff] or his cab.  Accordingly, no reasonable police officer would have ordered [Plaintiff] to transport Dustin Rowden against [Plaintiff's] will.

Opinion 3:  The record submitted thus far supports the opinion that the Austin Police Department has a de facto policy and custom of permitting officers to commandeer and order cab drivers to transport dangerous and intoxicated people to their homes contrary to their right (as codified) to refuse passengers—such as occurred in this set of facts.

("Clark Report," Dkt. # 59-1 at 6.)

First, Defendants argue that Clark's opinion regarding whether the Defendant officers forced Plaintiff to provide taxicab service should be excluded because the testimony will not assist the trier of fact.  (Dkt. # 59 at 4.)

Second, Defendants argue that Clark's opinions should be excluded as unreliable because they are not based on sufficient facts or data and are not the product of reliable principles or methods.

As a preliminary note, Clark's Report is woefully inadequate. It fails to meet the requirement of Federal Rule of Civil Procedure 26(a)(2)(B) because it does not express "the basis and reasons" for his opinions, and it lacks "the facts or data considered by the witness in forming" his opinions.

The Court finds that Clark's first opinion should be excluded for a number of reasons.  First, Clark offers legal conclusions such as the officers were "deliberately indifferent," and that the officers' actions were the "proximate cause" of Plaintiff's injuries.  These are not appropriate subjects for expert opinion testimony.  Second, the Court finds that Clark's opinions are not reliable. Although at the beginning of his report Clark lists the uncontested facts in this case, he appears to base his opinion on his determination that Plaintiff's story is the most credible.  It is for the jury to assess credibility, not an expert.  Although, the Court finds that Clark may have expertise in law enforcement practices.  The Court will exclude this testimony because Clark has failed to provide any basis for his opinion, either in his Report or deposition testimony, of how a reasonable officer would respond in this situation. The Court will not accept unsupported assertions as expert testimony.  Therefore, Clark's first opinion, as outlined in this report, is excluded; Defendants' motion on this opinion is **GRANTED.**

As to Clark's second opinion, the Court finds that Clark has not provided any foundation for his expertise regarding when a law enforcement

officer in Texas may or may not "commandeer" a cab.  Additionally,  Clark does

not provide any basis for his opinion of <u>why</u> it would be unreasonable for an

officer to place an intoxicated individual into a cab.  Although Clark states that it is

conceivable that an intoxicated person would not be dangerous, he does not

provide any assessment of when an officer could or could not reasonably seek a

taxicab for an intoxicated person without jeopardizing the cab driver's safety.

> Q.    Would you agree that just because a person is drunk does not
>        alone make that person a danger to themselves or others?
> A.    It's hard to imagine, but I suppose it's possible.

("Clark Dep.," Dkt. # 59-4 38:20–24.)  Clark provides no basis for his opinion—he

does not cite to any law, training manual, or police procedure to justify his

conclusions.  Therefore, because Clark's second opinion is based on nothing more

than his unsupported assertions, the Court **GRANTS** Defendant's motion to

exclude this opinion.

Finally, Defendant moves to exclude Clark's opinion that the Austin

Police Department has a <u>de facto</u> policy of permitting officers to commandeer

taxicabs to transport intoxicated people.  Clark's report provides no evidence in

support of this conclusion.  In his deposition, Clark states that he reached this

conclusion because of three affidavits—Plaintiff's affidavit, and the affidavits of

two other individuals, Moss and Chiat[2]—and the fact that a sergeant was present when Defendants flagged down Plaintiff's cab.  Clark did not state he used any data to reach his conclusions, and no other support for his opinion has been provided.  The Court is not even aware of what timeframe the Moss and Chiat statements cover.  Concluding that there is a policy in effect in a police department from three alleged statements, which the Court can only assume state the existence of such a policy, is an inherently unreliable conclusion.  Further, if all Clark did was read these statements and infer that if it happened multiple times, there must be a policy, there is no need for expert testimony; a jury could just as easily reach that conclusion on its own.

Because Clark has provided no foundation for his opinion, and it appears that his opinion would not be helpful to a jury, the Court **GRANTS** Defendants' motion on Clark's third opinion.

Although the Court has **GRANTED** Defendants' motion to strike Clark's expert testimony, the Court **GRANTS LEAVE** to Plaintiff to file a revised expert report by November 21, 2014.

---

[2] These affidavits have not been provided to the Court in connection with the motion to exclude expert testimony.

36

<u>CONCLUSION</u>

For the reasons stated above, the Court **GRANTS IN PART AND DENIES IN PART** Defendant's Motion for Judgment on the Pleadings (Dkt. # 56); **GRANTS IN PART AND DENIES IN PART** Plaintiff's Motion to Amend (Dkt. # 71); **GRANTS** Plaintiff's Motion to Exclude Expert Testimony (Dkt. # 46); and **GRANTS** Defendant's Motion to Exclude Expert Testimony (Dkt. # 59). However, the Court will permit Plaintiff to refile an expert report after the close of discovery and by **November 21, 2014**.

Additionally, in light of this Order, the Court finds that the following motions are now **MOOT**: (1) the City's Motion for Summary Judgment (Dkt. # 80); (2) Aguilar, Barger, Bozelli, and Kelly's Motion for Summary Judgment (Dkt. # 81); (3) Plaintiff's Motion to Strike Motion for Summary Judgment Evidence (Dkt. # 86); and (4) the City's Motion to Supplement its Motion for Summary Judgment (Dkt. # 89). The Court has found the above motions moot because discovery has reopened in this case.

Discovery will now close on **November 17, 2014**. The Court **ORDERS** that Plaintiff file a revised expert report by **November 21, 2014**. Defendant shall have until **November 28, 2014** to depose Plaintiff's expert. Motions for summary judgment shall be filed **Tuesday, December 16, 2014**.

Responses shall be due **Wednesday, December 31, 2014**.  Replies shall be filed

by **Wednesday, January 7, 2015**.

      IT IS SO ORDERED.

      DATED:  October 1, 2014, Austin, Texas.

                              _____

                                David Alan Ezra
                                Senior United States Distict Judge